UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05- cr-390 (JR) |
| | : | |
| v | : | |
| | : | |
| DARRIUS BOYKINS | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of incarceration at the low end of the Guidelines range of 18-24 months.

**I.   BACKGROUND**

On April 3, 2006, the defendant, Darrius Boykins, pled guilty to one Count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. §922(g)(1), and one Count of Simple Possession of Cocaine Base in violation of 21 U.S.C. § 844(a) and 851(a)(1). The case is set down for a sentencing hearing on June 29, 2006 at 9:00 a.m.

As part of his plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial: On September 29, 2005, at approximately 4:00 p.m., an officer of the Metropolitan Police Department witnessed a traffic accident at the intersection of New York Avenue and Bladensburg Road, N.E., in Washington, D.C. A vehicle driven by the defendant, Darrius Boykins, was observed striking two other vehicles, and then fleeing the scene. The MPD officers followed the defendant's vehicle until it stopped in traffic at a red light at 16th Street and New York Avenue, N.E. The defendant was

ordered out of the vehicle. Defendant was the only person in the car. As the defendant exited the car, he stated that he was unaware that he had been involved in an accident and admitted that he had smoked marijuana laced with PCP. The defendant was placed under arrest for Leaving After Colliding and DUI-Narcotics. A search of the defendant's vehicle revealed a .38 caliber revolver, loaded with 5 rounds of .38 caliber ammunition, in the front center console of the car. Further, a can of shaving cream with a false bottom was located under the driver's seat. Secreted inside of the can was one blue zip containing a green leafty substance and a clear sandwich bag containing a green leafy substance, both of which gave a strong odor consistent with the presence of PCP. The substance was analyzed by the Drug Enforcement Agency (DEA) and found to contain .48 grams of PCP. Found on the back seat of the vehicle was a plastic bag containing white pills. The pills were analyzed by the DEA and found to contain 2.6 grams of Diazepam, a controlled substance. Finally, found in a pouch in the back of the front passenger seat of the vehicle was a can of Ajax with a false bottom. Secreted inside the can was a clear plastic bag containing a tan rock-like substance which the DEA found contained 1.1 grams of cocaine base, and a clear zip-lock bag of a white powder substance which the DEA found contained 60.5 grams of cocaine hydrochloride.

Post-arrest and post-rights, the defendant gave a statement to police wherein he admitted that both the gun and narcotics found in his car were his. The .38 caliber revolver was test-fired and found operable. The defendant further agreed as part of his plea that the .38 caliber revolver and the ammunition were manufactured outside the District of Columbia.

Finally, as part of his plea, the defendant acknowledged that he had been convicted of a crime punishable by imprisonment of more than one year, prior to possession of the firearms and

ammunition in this case. Specifically, on August 29, 1988, the defendant was convicted of Distribution of Cocaine in F-12842-87 in D.C. Superior Court.

## II.    SENTENCING CALCULATION

### A    Statutory Maximum

The maximum sentence for Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year in violation of 18 U.S.C. §§922(g)(1), a Class C felony, is incarceration for a period not more than 10 years and/or a fine of $250,000, or both. The maximum sentence for Simple Possession of Cocaine Base in violation of 21 U.S.C. § 844(a) and 851(a)(1) is incarceration for a period of 15 days to 2 years and/or $2500 fine, or both.

### B.    United States Sentencing Guidelines Calculation

Based on a total offense level of 15 and a criminal history category of I, the defendant's Guidelines range is 18-24 months. PSR at ¶ 67. Further, by statute pursuant to 18 U.S.C. § 3561(a)(3) the defendant is not eligible for probation. Because the applicable Guidelines range is in Zone D of the Sentencing Table, the defendant is not eligible for probation under the Guidelines. See USSG § 5B1.1, Comment n. 2, and USSG § 5C1.1(f); PSR at ¶ 77. The PSR writer did not find factors indicating that a downward departure from the Guidelines was warranted. See PSR at ¶ 88.

### C.    The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the

Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 543 U.S. at 258. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals. This is so, said the court in United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has

repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons."  Id. at 950.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

### III. DEFENDANT SHOULD BE SENTENCED AT THE LOW END OF THE GUIDELINES RANGE

The Government recommends that the Court sentence the defendant at the low end of the Guidelines range of 18-24 months.  Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.  Those factors fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant.  United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

The defendant's illegal conduct represents a real and present danger to the community. Considering the level of gun violence in this city, a 922(g) conviction would be a serious offense in any case. When combined with the defendant's possession of powder cocaine, crack cocaine,

and PCP, the defendant's actions are deserving of severe reproach. Drugs and drug-related gun violence are the source of the vast majority of crimes in this city and of violence against its citizens. Indeed, defendant cannot claim that his illegal possession of the contraband in this case was harmless. He was under the influence of the narcotics in question at the time of his arrest, and those drugs caused him to wreck his car into to other automobiles, and then attempt to flee from the scene. See PSR ¶¶ 7, 30. It is vital that the Court send a message to both the defendant and the community that the possession of guns and drugs, and the reckless conduct their possession leads to, will not be tolerated.

In his sentencing memorandum, the defendant requests a downward departure on the basis that his illegal conduct on September 29, 2005, was "aberrational." A review of the defendant's criminal record reveals nothing of the sort. The defendant's September 29, 1995 convictions were not his first drug-related convictions, nor even his first DUI. The defendant was convicted of Distribution of (Crack) Cocaine in February 1988, and of Driving Under the Influence in May 2002. He also has a conviction for Taking Property without Right in August 1988, and arrests for Possession with Intent to Distribute Cocaine and Distribution of Cocaine in November 1987 and Malicious Destruction of Property in November 1995. The defendant plainly is not a first-time offender who committed a single aberrant criminal act departing from otherwise law-abiding behavior. Thus, the present case does not satisfy the test for "aberrational behavior" under either the extra-jurisdictional case law cite in the defendant's sentencing memorandum, see United States v. Morales, 972 F.2d 1007, 1011 (9th Cir. 1993) (allowing downward departure from guidelines where the defendant *is a first time offender* and has committed a single act of "truly aberrant behavior"), or in this Circuit which requires the

defendant to demonstrate that the behavior at issue was a "spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning". See United States v. Dyce, 78 F.3d 610, 619 (D.C. Cir. 1996), as amended on rehearing, 91 F.3d 1462, 1470 (D.C. Cir. 1996).  Here, the defendant's conduct was no thoughtless accident.  Rather, the defendant was driving while impair in a car wherein four different kinds of drugs and a gun had been carefully secreted, including inside false bottom cans.

The defendant's assertion that he is entitled to a § 5K2.0 departure by virtue of a "combination of factors" fairs no better.   The defendant asserts that those factors include his predicate felony offense being seventeen years old, his continual employment of eight years prior to his disability, and his family ties and community responsibilities.  As the D.C. Circuit reasoned in United States v. Riley, 376 F.3d 1160, 1170-71 (D.C. Cir. 2004), based on a request for departure by a 922(g) defendant situated nearly identically to the defendant here:

> These grounds are . . . insufficient to warrant a departure in [the defendant's] case.  The fact that [the defendant's] predicate conviction was old and for a non-violent crime, and the fact that he had no recent convictions, are not exceptional circumstances.  The age of [the defendant's] prior crimes was already taken into consideration by the criminal history guidelines, which accorded him the lowest criminal history category of I -- as if he had no criminal record at all.  In In re Sealed Case, 292 F.3d 913, 916-17 (D.C.Cir. 2002), this circuit held that a downward departure may not be based on a defendant's criminal history where the defendant is already in category I.  See also U.S.S.G. § 4A1.3 ("The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism.  Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate."). . . .
>
> The other cited characteristics -- [the defendant's] employment record, civic service, and family responsibilities -- are also insufficient. The sentencing guidelines categorize these as "discouraged factors," which are " 'not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range' " and may not form the basis of a departure unless they are present to "an exceptional degree." Koon, 518 U.S. at 95-96, 116 S.Ct. at 2045-46 (quoting U.S.S.G. ch. 5, pt. H, intro. cmt.).  It is "the

> defendant [who] bears the burden of proving by a preponderance of the evidence that he is eligible for a downward departure," United States. v. Goodwin, 317 F.3d 293, 297 (D.C.Cir. 2003), and [the defendant] has given us no reason to think that his circumstances in these respects are exceptional in any way. Finally, [the defendant's] claim that even if these factors do not individually warrant a departure, they do so in combination, faces an even higher -- and here insurmountable -- barrier: A departure based on such an alleged combination is permissible only in "an extraordinary" and " extremely rare" case. U.S.S.G. § 5K2.0, cmt.; see Dyce, 91 F.3d at 1468. [This] is not such a case.

Nor has the defendant met his heavy burden of demonstrating that his circumstances are exceptional in any way in this case. Rather, he presents as an individual with children, prior employment, and familial and community responsibilities. He also has a drug problem, a prior felony conviction for drug distribution, and illegally possessed both a gun and drugs inside a car he was driving while impaired on the night in quest. Like in Riley, these facts do not describe "an extraordinary" and "extremely rare" case.

Finally, it should be noted, that the defendant has already received a substantial benefit for his early acceptance of responsibility. Specifically, the defendant received a three point decrease in his offense level under the Guidelines. Had the defendant not received this benefit, his Guidelines range would have been 27-33 months rather than 18-24 months. Accordingly, the defendant has already received all the leniency he should under the plea. Sentencing the defendant within the Guidelines range would both serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated.

V.   **CONCLUSION**

The nature of the offense, the needs of the public and the defendant's criminal history all suggest a period of incarceration at the low end of the Guidelines range of 18-24 months would be appropriate.

        Respectfully,
        KENNETH L. WAINSTEIN
        United States Attorney
        Bar No. 451058

        _____

        G. Michael Harvey
        Assistant United States Attorney
        Narcotics Section, Mass.  Bar No. 447465
        555 4th Street, N.W.  #4243
        Washington, DC 20001
        Phone: 305-2195; Fax: 616-3782

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Hughie D. Hunt, II, Esquire, this 28th day of June, 2006.

        _____
        G. Michael Harvey
        Assistant United States Attorney